**SO ORDERED.**

**SIGNED this 15th day of January, 2013.**



*Dale L. Somers*
Dale L. Somers
United States Bankruptcy Judge

___

For on-line use but not print publication

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In re:<br><br>JORGE L. CONCHA and<br>GUADALUPE L. GARCIA,<br><br>DEBTORS. | CASE NO. 10-14186<br>CHAPTER 7 |

**MEMORANDUM OPINION AND ORDER DENYING
MOTION FOR ORDER NUNC PRO TUNC TO APPOINT RENDER KAMAS, L.C.
AS SPECIAL COUNSEL UNDER 11 U.S.C. § 327(a) AND
FOR COMPENSATION PURSUANT TO 11 U.S.C. § 503(b)(1)(A)**

Following an evidentiary hearing on September 18, 2012, the Court took under advisement the Motion for Order Nunc Pro Tunc Directing Trustee to Appoint Render Kamas, L.C. as Special Counsel under 11 U.S.C. § 327(a) and for Compensation Pursuant to 11 U.S.C. § 503(b)(1)(A) (Appointment Motion).[1] It addresses the issue of status of

___

[1] Dkt. 37.

Debtor Guadalupe Garcia's (Garcia) prepetition counsel who, before Debtor filed for relief under Chapter 7, negotiated the settlement of her personal injury claim.[2] For the reasons stated below, the Court denies the Appointment Motion.

**FINDINGS OF FACT.**

On September 2, 2009, Garcia was injured in an automobile accident. On Febraury 4, 2010, she engaged David M. Bryan (Bryan), a Wichita attorney to represent her in an action against the tortfeasor. Bryan, after unsuccessfully attempting to obtain a policy limit settlement recovery for Garcia, referred the case to Larry D. Ehrlich, who practices law with the Render Kamas L.C. (the Kamas firm). On August 19, 2010, the Kamas firm and Garcia entered into an employment agreement which provided, among other things, that the firm would receive one-third of any recovery obtained prior to a pretrial hearing (Employment Agreement).

Ehrlich undertook investigation of the case and correspondence with the appropriate insurance companies, including Farmers Insurance Group, which insured the driver alleged to have caused the accident. On January 18, 2011, Ehrlich send a letter to Farmers demanding tender of its insured's policy limits. By letter dated February 2, 2011,

---

[2] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. Further the motions are core proceedings which this Court may hear and determine as provided in 28 U.S.C. § 157(b)(2)(A). There is no objection to venue or jurisdiction over the parties.

Farmers advised Ehrlich of confirmation of the settlement offer of our $50,0000 policy limits.

Ehrlich met with Garcia on January 31, 2011, before the policy limit settlement was accepted by Farmers. During the meeting, Ehrlich learned for the first time that Garcia had filed a voluntary petition for relief under Chapter 7 on December 15, 2010. Her schedules did not report the tort claim. Ehrlich advised Garcia to inform her bankruptcy attorney of the claim, but there is no evidence that she did so. On February 4, 2011, Ehrlich spoke with Bryan concerning the bankruptcy filing and the settlement. On February 8, 2011, Ehrlich contacted Garcia's bankruptcy counsel, and, by letter dated February 8, 2011, Garcia's bankruptcy counsel informed the Chapter 7 Trustee, Steven L. Speth, that Garcia may have a personal injury claim. On February 14, 2011, Ehrlich conversed with the Chapter 7 Trustee about the claim. By letter dated February 15, 2011, Ehrlich gave the Chapter 7 Trustee details concerning Garcia's claim, including the fact that she may have an underinsured motorist claim (UIM) against American Family Insurance, and requested that the Trustee retain him to finalize settlement with the tortfeasor and pursue the potential UIM claim. By letter also dated February 15, 2011, the Trustee informed Ehrlich that he had decided to pursue Debtor's personal injury claim and settlement for the benefit of the estate, demanded turnover of the file, and stated that it was not his intent to hire Ehrlich as counsel for the matter.

3

Case 10-14186    Doc# 79    Filed 01/15/13    Page 3 of 11

On March 16, 2011, the Trustee filed an application to employ Timothy J. King of the law firm of Speth & King, to file and pursue adversary proceedings.[3] The attached agreement identifies the adversary proceedings as claims under §§ 547 and 548 and provides for payment of 1/3 of all amounts recovered by settlement, to be paid out of the initial lump sum payment.[4] No notice with opportunity for hearing was given, and the order approving the motion was entered on the same day.

On July 11, 2011, the Trustee filed his Application for Order to Pay Fees to Trustee's Counsel and for Authorization to Endorse and Deposit Settlement Checks (Fee Application).[5] It recites that the Trustee has made a settlement of Garcia's personal injury claim for $50,000 from Farmers and $15,000 from American Family and that the settlement checks were made payable jointly to the Trustee and other parties, including the Kamas firm, who claimed liens in the settlement proceeds. The motion prays for an order granting the Trustee authority to endorse the checks on behalf of all named parties; to pay King a one-third contingency fee of $21,666.66; and to hold the remaining $43,333.33 pending resolution of the claimed liens. Two lien claimants, the Kamas firm and Blue Cross and Blue Shield of Alabama, filed limited objections.[6] On September 12,

---

[3] Dkt. 17.

[4] Dkt. 17-1.

[5] Dkt. 30.

[6] Dkts. 32, 33 & 40.

4

2011, the Court granted the Trustee authority to endorse the settlement checks and to hold the proceeds, but continued the issue of fees.[7]

On August 12, 2011, the Kamas firm filed its Appointment Motion.[8] It seeks an order of the Court directing the Trustee to appoint the Kamas firm as counsel to pursue Garcia's claims against the third party tortfeasor and to compensate the Kamas firm in accord with the Employment Agreement with Garcia. The Kamas firm argues that extraordinary circumstances are present, as required for a nunc pro tunc appointment, since the Debtor did not list her tort claim on her schedules, the Debtor concealed her bankruptcy filing from the Kamas firm, and the Kamas firm requested the Trustee to employ it, but he refused to do so and obtained an order appointing his partner as counsel for the estate. The Trustee objected.[9]

On August 24, 2011, the Kamas firm filed a proof of claim for $21,450, as an administrative claim.[10] A copy of the Employment Agreement is attached to the proof of claim.

On September 13, 2011, the Trustee filed an adversary Complaint to Determine Lien Rights and to Avoid Liens.[11] Ehrlich and the Kamas firm, as well as Bryan and Blue

---

[7] Dkt. 46.

[8] Dkt. 37.

[9] Dkt. 41.

[10] Claim 13.

[11] Case no. 11-05196, dkt. 1.

5

Cross Blue Shield of Alabama, are defendants. The Complaint alleges that the claims of the defendants to the personal injury tort claim settlement proceeds are based upon statutory liens which are avoidable under § 545. On December 12, 2011, the Trustee objected to the Kamas firm's proof of claim, asserting that it should not be allowed since it is the subject of an adversary action, in which the amount of the claim, if any, will be determined and resolved.[12] The objection was sustained.[13] In the pretrial order, filed on April 12, 2012, the Kamas firm agreed that its attorney lien is avoidable,[14] but there is nothing in the adversary complaint or the pretrial order addressing the Kamas firm's claim, other than to avoid the statutory lien.

**DISCUSSION.**

The Appointment Motion must be denied. It faces four insurmountable hurdles. First, under § 327(a), it is the trustee who has standing to request appointment of professional persons, subject to court approval. Here the Appointment Motion, filed by the Kamas firm, seeks to avoid this problem by framing the motion as requesting a order of the Court directing the Trustee to appoint the Kamas firm. But this approach runs into the second hurdle. Section 327(a) provides that trustees may select their own attorneys. Generally, "[e]ven when the court is justified in declining to approve a proposed employment, the court should not make the selection of an alternate but should allow the

---

[12] Dkt. 59.

[13] Dkt. 61.

[14] Case no. 11-05196, dkt. 17.

6

trustee to nominate another attorney satisfactory both to the trustee and to the court."[15]  Third, the Appointment Motion requests retroactive appointment for services provided after the date of filing and before the date of appointment.  In the Tenth Circuit, such appointments are allowed only in extraordinary circumstances.[16]  Here there are no extraordinary circumstances justifying the delay from February 8, 2011, when the Trustee learned of the existence of the personal injury claim, to August 12, 2011, when the Appointment Motion was filed.  The Trustee's own motion to appoint Mr. King was filed on March 16, 2011.  Fourth, the Court observes that the work to be performed by counsel representing the estate with respect to the personal injury claim appears to have been completed, rendering at least a portion of the Appointment Motion moot.  The settlement with both insurance carriers has been finalized.  With respect to the insurance claims, there is nothing more for counsel to do.

To overcome at least some of these hurdles, the Kamas firm relies upon *In re Vouzianas*,[17] a decision of the Second Circuit Court of Appeals.  In *Vouzianas*, as in this case, prepetition the debtor was injured and retained his choice of counsel, Ready, to pursue his tort claim.  After the bankruptcy filing, the trustee moved for and obtained an order appointing Marcus to take over the litigation.  Ready refused to turnover the file and

---

[15] 3 *Collier on Bankruptcy* ¶ 327.04[1] (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 16th ed. rev. 2012).

[16] *Land v. First Nat'l Bank of Alamosa (In re Land)*, 943 F.2d 1265 (10th Cir. 1991).

[17] *Pryor v. Ready & Pontisakos (In re Vouzianas)*, 259 F.3d 103 (2nd Cir. 2001).

7

moved the court for an order reversing the appointment of Marcus and seeking permission to stay on as counsel. Ready, who was found to be capable counsel, had represented the debtor for four or five years and had developed a good working relationship with the client. The debtor filed an affidavit stating that the trustee had not consulted with him before changing his personal injury lawyer and asked the judge to allow him to keep Ready as his lawyer. The personal injury suit was scheduled for trial in a little over a year. The bankruptcy court revoked the first order of appointment and appointed Ready. Both the district court and the Second Circuit Court of Appeals affirmed. The Second Circuit stated, "The general rule of deference to the trustee's choice of special counsel, however, has its exceptions. Sometimes reasons exist 'which make it for the best interest of the estate to have the court select the attorney over the trustee's objection.'"[18] The factual record as to the interests of the estate were found sufficient to support the bankruptcy court's action. A strong dissent questioned the authority of the bankruptcy court to appoint an attorney for the trustee against the trustee's will.[19]

There are no Tenth Circuit cases either accepting or rejecting the Second Circuit's position as stated in *Vouzianas*. But, assuming the Tenth Circuit would follow *Vouzianas*, this Court would not find that the best interests of the estate would justify the appointment of the Kamas firm to pursue the personal injury claim against the will of the Trustee. In this case, the major portion of the personal injury claim was essentially

---

[18] *Id*. at 108., *quoting In re Mandell*, 69 F.2d 830, 831 (2nd Cir. 1934).

[19] *Id*. at 110-113.

settled before the bankruptcy was filed, and the remaining UIM claim was settled shortly thereafter. There was no trial scheduled. The estate's interests were not significantly compromised by the appointment of King.

The Court therefore denies the Appointment Motion. Since the portion of the Appointment Motion requesting fees under § 503(b)(1)(A) is premised upon appointment under § 327(a), the Court also denies that request for award of the contingency fee to the Kamas firm.

But the Court also recognizes that the issue of importance to the Trustee and the Kamas firm presented by the Appointment Motion, as well as other pleadings, is the question of attorney fees. This dispute poses the following question: when a debtor is injured prepetition and retains a law firm on a contingency fee basis to pursue a claim against the tortfeasor but files for bankruptcy before an agreed settlement is finalized, is the personal injury attorney entitled to the contingency fee as agreed with the debtor? Under the Bankruptcy Code, a prepetition contingency fee agreement is an executory contract between the debtor and the personal injury attorney. Once a Chapter 7 case is filed, the Chapter 7 Trustee may, subject to the court's approval, either assume or reject the contract. In a Chapter 7 case, where the trustee does not seek court approval to assume or reject an executory contract within 90 days after the date of filing, the contract is deemed rejected.[20] If the contract is rejected, the contract is breached as of the petition

---

[20] 11 U.S.C. § 365(d)(1).

9

date.  "Whether the resulting claim [for breach] is secured or unsecured and entitled to priority, general or subordinated status will be determined generally by the terms of the contract . . . and the general provisions on allowance and priority of claims under sections 501 through 510."[21]  When the contract in issue is a contingent fee agreement between the debtor and counsel, one court has held that the rejection constitutes a cancellation of the agreement, which can no longer serve as the measure of compensation, but the attorney is not deprived of a fee.[22]  Rather, the "discarded attorney is entitled to apply to [the] court for a determination of the reasonableness of his fees, based upon the time invested, the nature, the extent and the value of the legal services and the cost of comparable services."[23]

In this case, the Employment Agreement was not assumed and is deemed rejected. As to compensation, to date all of the efforts of the Kamas firm have been directed at obtaining payment for its services as an administrative claim in the amount of one-third of the settlement with Farmers.  But the denial of the Appointment Motion, the sustained objection to the Kamas firm's proof of claim, and the Kamas firm's admission in the adversary proceeding that its claimed attorney lien is avoidable forecloses this relief.  The Trustee's Fee Application, which is not under advisement, seeks precisely the same award of one-third of the settlement amount.  However, under the circumstances of this case, the

---

[21] 3 *Collier on Bankruptcy* ¶ 365.10[1].

[22] *In re PDQ Copy Center, Inc.*, 27 B.R. 123, 125 (Bankr. S.D.N.Y. 1983)

[23] *Id*. at 126.

10

award of claims for fees for work on the personal injury case is not an either or situation; denial of the Karmas firm's request for compensation of one-third of the recovery does not mean that King is entitled to such an award. The Court will consider the merits of an award of fees to both counsel appointed by the Court and to the Kamas firm, assuming appropriate application is made.

**CONCLUSION AND JUDGMENT.**

For the foregoing reasons, the Motion for Order Nunc Pro Tunc Directing Trustee to Appoint Render Kamas, L.C. as Special Counsel under 11 U.S.C. § 327(a) and for Compensation Pursuant to 11 U.S.C. § 503(b)(1)(A) is hereby denied. Judgment is so entered.

The foregoing constitute Findings of Fact and Conclusions of Law under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure which make Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter. Judgment denying the Motion for Order Nunc Pro Tunc Directing Trustee to Appoint Render Kamas, L.C. as Special Counsel under 11 U.S.C. § 327(a) and for Compensation Pursuant to 11 U.S.C. § 503(b)(1)(A), based on this ruling stated above, will become effective when it is entered on the docket for this case, as provided by Federal Rule of Bankruptcy Procedure 9021.

**IT IS SO ORDERED.**

###

11

Case 10-14186    Doc# 79    Filed 01/15/13    Page 11 of 11